| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire<br>Angela L. Mastrangelo, Esquire<br>Nicholas R. Jimenez, Esquire<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ  08054<br>Phone: (856) 795-3300<br>Fax: (856) 482-0504<br>edmond.george@obermayer.com<br>*Attorneys for the Debtor* | |
| **In re:**<br><br>    **High Brass Farm Land Holdings LLC,**<br><br>                      **Debtor.** | **Chapter 11**<br><br>**Case No. 19-25217 (MBK)**<br>**Judge: Michael B. Kaplan** |
| **MICHAEL MERBLER, ELIZABETH PERRY-MERBLER, HIGH BRASS FARM LAND HOLDINGS LLC, and HIGH BRASS FARM, LLC,**<br>                      **Plaintiffs,**<br><br>           **v.**<br><br>**SKY MANOR AIRPORT PARTNERS, LLC, NEW JERSEY TITLE INSURANCE COMPANY N/D/B/A CATIC TITLE INSURANCE COMPANY AND BANK OF AMERICA,**<br>                      **Defendants.** | **Hearing Date: February 19, 2020**<br>**Court Room: 8**<br><br> **Adversary No. 19-02093 (MBK)** |

**CERTIFICATION OF EDMOND M. GEORGE, ESQUIRE,**
**IN SUPPORT OF THE PROPOSED SETTLEMENT OF CONTROVERSY AMONG**
**HIGH BRASS FARM LAND HOLDINGS LLC AND SKY MANOR AIRPORT**
**PARTNERS, LLC**

I, Edmond M. George, Esquire, counsel to High Brass Farm Land Holdings LLC (the

"Debtor"), submit this Certification in Support of the Debtor's Motion to Approve the Proposed

Settlement of Controversy among the Debtor and Sky Manor Airport Partners, LLC.

1

1.      I am an attorney admitted to practice before this Court and am counsel to John W. the Debtor in the above captioned bankruptcy proceedings and the instant adversary proceeding.

2.      The Debtor's case was commenced on August 6, 2019 by the filing of a voluntary Chapter 11 petition under 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code").

3.      The Debtor acquired the Farm, 35.19 acres, consisting of commercial and residential real property in 2005, which is utilized by an affiliate as a full-service equine boarding, training and show facility consisting of several barns containing forty (40) stalls, indoor and outdoor training and equine rehabilitation facility, fenced paddocks, and residential rental properties.

4.      Sky Manor, acquired the adjacent commercial real property in 2008, which property is utilized as a private aviation facility, known as Sky Manor Airport, with a 2,900-foot paved runway equipped for day and night operation (the "Airport").

5.      Prior to 2002, the Farm and the Airport were owned as a single 94-acre tract of land which is now subdivided pursuant to final approval granted by the Alexandria Township Planning Board ("Planning Board") in a Resolution dated January 20, 2005.

6.      A subdivision plat was recorded on June 15, 2005, with an amended plat recorded as instrument on July 5, 2006, which subdivision ("Subdivision") divided the property into 19 distinct lots (the "Subdivision") which became the Airport, the Farm, and a 17 Lot residential development that serves as a residential community ("Airpark").

7.      As a result of a site plan approval granted on April 10, 2006, the Airport was permitted to extend its runway over what was at that time the Farm's driveway, and the Subdivision approved the removal of the Farm's original driveway and also approved access to

the Farm to/from Sky Manor Road via a driveway through the Airport's property (the "New Driveway").

8.        In or about 2015 a dispute arose between Sky Manor and the Debtor concerning the rights to use the New Driveway, which is the only means of ingress and egress other than an emergency access, to and from the Farm via Sky Manor Road.  Without access to Sky Manor Road via the New Driveway, the Farm was completely landlocked except for the emergency access.

9.        On or about December 13, 2018, High Brass, along with its two (2) members, Michael Merbler and Elizabeth Perry-Merbler, and High Brass Farm, LLC commenced a civil action in the Hunterdon County Superior Court against Sky Manor Airport Partners, LLC, New Jersey Title Insurance Company n/d/b/a CATIC, and Fidelity National Title Insurance,[2] Case No: HNT-L-000477-18 (the "State Litigation").

10.      On August 14, 2019, the Litigation was removed to the Bankruptcy Court seven (7) days after the Petition Date captioned *High Brass Farm Land Holdings LLC et al. v. Sky Manor Airport Partners, LLC et al*., and assigned adversary number 19-02093(MBK) ("Adversary Proceeding", collectively with the State Litigation, the "Litigation").

11.      The Debtor and Sky Manor agreed to mediation with Anthony Sodono, Esq. serving as the mediator (the "Mediation").

12.      The Parties having engaged in the Mediation of their disputes and have reached a resolution of the issues related to the New Driveway and ingress and egress to the Farm.

13.      The Debtor spent significant time analyzing the respective positions of the Parties and concluded that a resolution of the issues with Sky Manor, only, and without any prejudice to

---

[2] Fidelity National Title Insurance filed a motion to dismiss which was granted on April 30, 2019 and is no longer a Party to the action indexed at HNT-L-000477.

the remaining alleged claims against the remaining defendants, was in the best interest of the Debtor's Estate.

14.     Though the Debtor believes that it will prevail on the claims against Sky Manor, the Debtor wishes to settle the clams, the outcome of which is uncertain.

15.     The settlement ensures a right to access the Farm, and for maintenance of the New Driveway.

16.     The Debtor negotiated the proposed Settlement Agreement in good faith.

17.     By its Motion, the Debtor seeks authorization to settle and compromise the claims as set forth in the Settlement Agreement. (A copy of the proposed Settlement Agreement is attached hereto as Exhibit "A").

18.     I certify that the foregoing statements made by me are true and correct to the best of my knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


DATE:  January 27, 2020                    */s/ Edmond M. George*            
                                           Edmond M. George, Esquire

**EXHIBIT "A"**

# SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this _____ day January of 2020, by and between High Brass Farm Land Holdings LLC, a New Jersey Limited Liability Company, with its principal address at 68 Sky Manor Road, Pittstown, New Jersey ("High Brass"), and Sky Manor Airport Partners, LLC, a New Jersey Limited Liability Company, with a principal address at 48 Sky Manor Road, Pittstown, New Jersey ("Sky Manor" with High Brass the "Parties" and each a "Party"), and each intending to be mutually bound by the promises and covenants contained herein do hereby enter into this Settlement Agreement, and agree as follows:

**WHEREAS**, High Brass, a New Jersey limited liability company, acquired Lot 21, Block 38, 35.19 acres of commercial and residential real property in 2005 which is utilized by an affiliate as a full-service equine boarding, training and show facility consisting of several barns containing forty (40) stalls, indoor and outdoor training and equine rehabilitation facility, fenced paddocks, and residential rental properties (the "Farm"); and

**WHEREAS**, Sky Manor, a New Jersey limited liability company, owns and operates commercial real property known as Lots 38.02 and 40 in Block 21, in 2008, which property is utilized as a private aviation facility, known as Sky Manor Airport, with a 2,900-foot paved runway equipped for day and night operation (the "Airport"); and

**WHEREAS**, the Farm and the Airport are adjacent parcels once owned by a common owner; and

**WHEREAS**, prior to 2002, the Farm and the Airport were owned as a single 94-acre tract of land which is now subdivided pursuant to final approval granted by the Alexandria Township Planning Board ("Planning Board") in a Resolution dated January 20, 2005; and

1

**WHEREAS**, a subdivision plat was recorded as map #8547128 on June 15, 2005, with an amended plat recorded as instrument #8591746 on July 5, 2006, which subdivision ("Subdivision") divided the property into 19 distinct lots (the "Subdivision") which became the Airport, the Farm, and a 17 Lot residential development that serves as a residential community ("Airpark"); and

**WHEREAS**, as a result of a site plan approval granted on April 10, 2006, the Airport was permitted to extend its runway into Lot 38.02, over what was at that time the Farm's driveway, and the Subdivision approved the removal of the Farm's original driveway and also approved access to the Farm to/from Sky Manor Road via a driveway through the Airport's property (the "New Driveway") as well as emergency access via Amelia Way); and

**WHEREAS,** an access easement allowing High Brass to use the New Driveway has not previously been recorded; and

**WHEREAS**, around 2015 a dispute arose between Sky Manor and High Brass concerning the rights to use the New Driveway, which is the only means of ingress and egress other than the emergency access, to and from the Farm via Sky Manor Road; and

**WHEREAS**, without access to Sky Manor Road via the New Driveway, the Farm was completely landlocked except for the emergency access; and

**WHEREAS**, on August 6, 2019 (the "Petition Date"), High Brass filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). High Brass's bankruptcy case is captioned as: *In re High Brass Farm Land Holdings LLC*, D.N.J., Case No. 19-25217(MBK) (the "Bankruptcy Case"); and

217858043

OMC\4821-1730-3218.v1-1/17/20

**WHEREAS**, prior to the Petition Date, on or about December 13, 2018, High Brass, along with its two (2) members, Michael and Elizabeth Merbler, and High Brass Farm, LLC commenced a civil action in the Hunterdon County Superior Court against Sky Manor Airport Partners, LLC, New Jersey Title Insurance Company n/d/b/a CATIC, and Fidelity National Title Insurance,[1] Case No: HNT-L-000477-18 (the "State Litigation"); and

**WHEREAS**, on August 14, 2019, the Litigation was removed to the Bankruptcy Court seven (7) days after the Petition Date captioned *High Brass Farm Land Holdings LLC et al. v. Sky Manor Airport Partners, LLC et al.*, and assigned adversary number 19-02093(MBK) ("Adversary Proceeding", collectively with the State Litigation, the "Litigation"); and

**WHEREAS**, certain Parties agreed to mediation with Anthony Sodono, Esq. serving as the mediator (the "Mediation"); and

**WHEREAS**, the Parties having engaged in the Mediation of their disputes and have reached a resolution of the issues related to the New Driveway and ingress and egress to the Farm; and

**WHEREAS**, the Parties have determined that resolution of the instant matter short of litigation, best serves the interests of all parties involved.

NOW THEREFORE, AND THE PARTIES INTENDING TO BE MUTUALLY BOUND BY THE PROMISES AND COVENANTS CONTAINED HEREIN, DO HEREBY STIPULATE AND AGREE AS FOLLOWS:

---

[1] Fidelity National Title Insurance filed a motion to dismiss which was granted on April 30, 2019 and is no longer a Party to the action indexed at HNT-L-000477.

217858043

OMC\4821-1730-3218.v1-1/17/20

1.     Sky Manor acknowledges the easement for the New Driveway in its present location, and the Parties will execute and file a recorded access easement ("Driveway Access Easement and Maintenance agreement") in the form attached hereto as Exhibit A, with the Driveway Access Easement Area described by reference to the marked-up survey excerpt, attached as a part of Exhibit "A". The Exhibit "A", Driveway Access Easement and Maintenance agreement shall be fully executed within 15 days of Court Approval of this Settlement Agreement by final order, and recorded by Sky Manor as soon as possible thereafter.

2.     The Driveway Access Easement and Maintenance agreement attached as Exhibit "A" limits uses by High Brass to traffic resulting from current or other permitted uses of the Farm. Exhibit "A" also prohibits parking by Sky Manor on or along the gravel portion of the Driveway Access Easement area, except that Sky Manor may have reasonable access to the gravel portion as necessary for maintenance and repair of the existing septic system and propane tank located in that area of the Airport. Exhibit "A" also provides that if in the process of accessing the gravel portion of the easement, Sky Manor damages the surface, it shall immediately repair same at its sole cost and expense.

3.     Starting at the recording date Exhibit "A" and continuing without interruption *ad infinitum* into the future, both Parties shall carry insurance and shall list each other as additional insureds. Also starting at the recording of Exhibit "A", and continuing without interruption *ad infinitum* into the future, High Brass shall indemnify and hold Sky Manor harmless for all damages arising on the gravel portion of the easement, not covered by insurance and Sky Manor will indemnify and hold High Brass harmless for any damages occurring on the paved portion of the easement not covered by insurance.

4

4.      Starting at the recording date of Exhibit "A", and continuing without interruption *ad infinitum* into the future, High Brass shall maintain the gravel portion of the Access Easement at its sole cost.

5.      Starting at the recording date of the Exhibit "A" Access Easement, and continuing without interruption *ad infinitum* into the future. Sky Manor shall maintain the paved portion of the Access Easement at its sole cost, and maintenance shall include snow-plowing, repairs and repaving in accordance with the following:

a.      High Brass shall deposit One Thousand Dollars ($1,000.00) per quarter into a designated paving escrow account beginning 15 days after recording of the Exhibit "A" Access Easement, *ad infinitum,* for contribution by High Brass towards repaving of the paved portion of the Access Easement, and such funds shall not be used for minor repairs or snow-plowing. The amount of the deposit shall be increased on an annual basis in accordance with the BLS consumer price index for the northeast region of the United States.

b.      At such time as Sky Manor deems repaving to be necessary to allow convenient use by its tenants, customers and members, but no more frequently than every eight (8) years, the paved portion of the access easement may be repaved, in which case funds in the paving escrow account may be utilized by Sky Manor for repaving. Sky Manor shall be the contracting party for any repaving, which shall be done in a workmanlike manor. Sky Manor can in its discretion pave more frequently at its own expense, and without the use of the funds set forth in ¶ a hereof.

217858043

OMC\4821-1730-3218.v1-1/17/20

c.     In the event that High Brass fails to make any quarterly payment within thirty (30) days of the due date, Sky Manor may, after providing certified mail notice to High Brass, pursue enforcement of the Settlement Agreement by summary proceeding in the Law Division, Hunterdon County but shall not attempt to block access or otherwise impair High Brass's interests in the Access Easement.

6.     In consideration of the terms herein, and for other good and valuable consideration, High Brass, on one hand, and Sky Manor, on the other hand, do hereby mutually release and discharge each other, and their respective heirs, representatives, agents, employees, attorneys, successors, assigns and affiliates, from any and all claims of any nature whatsoever, which High Brass and Sky Manor, or their successors, assigns and affiliates now or hereafter can or may have against each other, from the beginning of the world to the date of these presents, including, but not limited to, any claims arising out of or in connection with the access between High Brass and Sky Manor dispute, not otherwise specifically preserved in this Settlement Agreement ("Mutual Releases").  The Mutual Releases contained herein shall be effective upon a final Order of the Bankruptcy Court approving this Settlement Agreement.

7.     The Mutual Releases provided for herein shall not apply to any third-party or non-signatory on this Settlement Agreement.

8.     The Parties agree that Sky Manor may record, at its sole cost after execution by High Brass, the release/extinguishment of easement(s) recorded at Deed Book 91, page 243 and Deed Book 771, page 936, for the old driveway which runs through the Airport runway extension, said release/extinguishment to be in form attached as Exhibit "B".

6

9.      High Brass shall within 10 days of full execution of the Settlement Agreement, file a Motion to Approve the Settlement Agreement Pursuant to Federal Bankruptcy Rule 9019.

10.     Sky Manor's Pre-Petition damage claim shall be allowed as an Unsecured Claim in the amount of Two Thousand Dollar ($2,000.00), which will receive no distribution until other General Unsecured Claims are paid under the Plan.

11.     High Brass will file a Plan that is consistent with the Term Sheet and this Settlement Agreement.  Sky Manor will support any Plan filed pursuant to this paragraph.

12.     Upon entry of a final Order of the Bankruptcy Court approving the Settlement Agreement, High Brass shall dismiss Sky Manor as a party in the Litigation.

13.     Notwithstanding anything to the contrary herein, this Settlement Agreement is subject to written agreement by Bank of America, N. A. to the following: (i) the form and content of Exhibits "A" and "B", (ii) the recording of Exhibits "A" and "B"; and (iii) that Exhibits "A" and "B" shall be binding upon and have priority over Bank of America, N. A.'s mortgage and other interests in the Farm and/or Airport.

14.     Neither this Settlement Agreement nor any other documents executed or delivered in connection herewith shall constitute or be considered any admission or acknowledgement of liability on the part of any Party hereto, nor be deemed to be evidence thereof.

15.     This Settlement Agreement is intended by the Parties as a final expression of their settlement, and is intended as a complete and exclusive statement of the terms and conditions thereof.  Acceptance of or acquiescence in a course of performance rendered under this Agreement shall not be relevant to determine the meaning of this Settlement Agreement even though the

217858043

OMC\4821-1730-3218.v1-1/17/20

accepting or acquiescing party had knowledge of the nature of the performance and opportunity for objection.

16. This Settlement Agreement contains the entire agreement between the Parties hereto and this Settlement Agreement may not be amended, modified or waived except by a writing executed by the Parties.

17. If any provision of this Settlement Agreement should be found to be invalid or unenforceable, all of the other provisions shall nonetheless remain in full force and effect to the maximum extent permitted by law.

18. The Parties to this Settlement Agreement covenant and agree that they will execute such other instruments and documents that are and may become necessary to effect and carry out this Settlement Agreement.

19. Each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to the matters underlying this Settlement Agreement, unless otherwise specifically indicated herein.

20. This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing the document to be drafted. Each Party warrants that it has been represented and fully advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

21. This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto including any subsequently appointed trustee or other fiduciary, and may be executed via facsimile or in multiple original counterparts, each of which

8

shall be deemed an original, and all such counterparts shall together constitute but one and the same instrument.

22.     This Settlement Agreement shall be interpreted in accordance with the law of the State of New Jersey and applicable provisions of Title 11 of the United States Code.

23.     Any dispute arising out of this Settlement Agreement shall be resolved by the Bankruptcy Court with the Parties desire to retain jurisdiction of the Bankruptcy Court.

**THE PARTIES HERETO, AND EACH INTENDING TO BE MUTUALLY BOUND HAVE EXECUTED THIS SETTLEMENT AGREEMENT ON THE DATE SET FORTH BELOW.**

HIGH BRASS FARM LAND HOLDINGS LLC

Dated: _____        _____

SKY MANOR AIRPORT PARTNERS LLC

Dated: _____        By: _____
                               Name:
                               Title:

9

# EXHIBIT A

# EXHIBIT "A" TO SETTLEMENT AGREEMENT

# DRIVEWAY ACCESS EASEMENT AND MAINTENANCE AGREEMENT

This Driveway Access Easement and Maintenance Agreement is made and entered into as of January ___, 2020, by and between Sky Manor Airport Partners, LLC, a New Jersey limited liability company with a principal address at 48 Sky Manor Road, Pittstown, New Jersey ("Sky Manor" or "Grantor") and High Brass Farm Land Holdings, LLC, a New Jersey limited liability company with its principal address at 68 Sky Manor Road, Pittstown, New Jersey ("High Brass" or "Grantee").

WHEREAS, Grantor is the owner of real property located in Alexandria Township and known as Lots 38.02 and 40 in Block 21; and

WHEREAS, Grantee is the owner of real property located in Alexandria Township known as Lot 38, Block 21; and

WHEREAS, the property owned by Grantor is located adjacent to the property owned by Grantee; and

WHEREAS, The parties have entered into a Settlement Agreement providing, among other things, for the execution and recording of a Driveway Access Easement and Maintenance Agreement after Court approval of the Settlement Agreement; and

WHEREAS, this Driveway Access Easement and Maintenance Agreement sets forth the terms and conditions under which Grantee shall have access through the Driveway Access Easement Area as shown on the attached Exhibit A hereto, which Exhibit A shows both the gravel portion and the paved portion of the Driveway Access Easement Area.

NOW, THEREFORE, Grantor for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) lawful money of the United States of America and other good and valuable consideration, to it in hand paid by Grantee and in consideration of the agreements and covenants herein undertaken by Grantee, hereby covenants to Grantee a driveway access easement in the nature described below and pursuant to the terms and conditions described below:

1. Grantor hereby grants to Grantee, a perpetual, non-exclusive easement on, over, through and across Grantor's property, in the location described in the attached Exhibit A.

2. Grantee's use of the access easement shall be limited to vehicular and pedestrian traffic resulting from current or other permitted uses of Grantee's property, Lot 38, Block 21.

3. Parking by Grantor is prohibited on or along the gravel portion of the Driveway Access Easement Area, except that Grantor may have reasonable access to the gravel portion as necessary for maintenance and repair of the existing septic system and propane tank located in that area of Grantor's property. If in the process of accessing the gravel portion of the Driveway Access Easement Area, Grantor damages the surface, it shall immediately repair same at its sole cost and expense.

4.     Grantee shall indemnify and hold Grantor harmless for any damages occurring on the gravel portion of the Driveway Access Easement Area, which damages are not covered by insurance and Grantor shall indemnify and hold Grantee harmless for any damages occurring on the paved portion of the Driveway Access Easement Area, which damages are not covered by insurance.

5.     Grantee shall obtain and maintain insurance coverage, including commercial general liability insurance covering bodily injury and property damage liability, contractual liability, personal and advertising injury liability, completed operations and products liability, with the limit of liability as such insurance not being less than $1,000,000.00 per occurrence. Grantee shall also obtain and maintain automobile bodily injury and property damage liability insurance for owned, non-owned and hired automobiles used in the performance of this Agreement with a limit of liability of such insurance to be not less than $1,000,000.00 combined single limit for bodily injury and property damage. Grantee shall provide Grantor, annually, with certificates or other documentary evidence of the above-required insurance. The maintenance of the above-described insurance shall not relieve Grantee of its indemnity obligations as set forth herein.

6.     Grantor shall obtain and maintain insurance coverage, including commercial general liability insurance covering bodily injury and property damage liability, contractual liability, personal and advertising injury liability, completed operations and products liability, with the limit of liability as such insurance not being less than $1,000,000.00 per occurrence. Grantor shall also obtain and maintain automobile bodily injury and property damage liability insurance for owned, non-owned and hired automobiles used in the performance of this Agreement with a limit of liability of such insurance to be not less than $1,000,000.00 combined single limit for bodily injury and property damage. Grantor shall provide Grantee, annually, with certificates or other documentary evidence of the above-required insurance. The maintenance of the above-described insurance shall not relieve Grantor of its indemnity obligations as set forth herein.

7.     Grantee shall maintain the gravel portion of the Driveway Access Easement Area, said maintenance to be at Grantee's sole cost and expense.

8.     Grantor shall maintain the paved portion of the Driveway Access Easement Area, said maintenance to be at the sole expense of Grantor, and to include snow plowing, repairs and repaving in accordance with the following:

a.     Grantee shall deposit $1,000.00 per quarter, ad infinitum, into a designated paving escrow account. The purpose of this escrow account is for contribution by Grantee towards repaving of the paved portion of the Driveway Access Easement Area, and such funds shall not be used for minor repairs or snow plowing. The amount of the deposit shall be increased on an annual basis in accordance with the BLS consumer price index for the northeast region of the United States.

b.     At such time as Grantor deems repaving to be necessary to allow convenient use by its tenants, customers and members, but no more frequently than every eight years, the paved portion of the Driveway Access Easement Area may be repaved, in which case

2

funds in the paving escrow account may be utilized by Grantor for repaving. Grantor shall be the contracting party for any repaving, which shall be done in a workmanlike manor. Grantor can in its discretion pave more frequently at its own expense, and without the use of the funds set forth in ¶ a. hereof.

   c.  In the event that Grantee fails to make any quarterly payment within 30 days of the due date, Grantor may, after providing certified mail notice to Grantee, pursue enforcement by summary proceeding in the Law Division, Hunterdon County but Grantor shall not attempt to block access or otherwise impair Grantee's interests in the Driveway Access Easement Area.

   9.  Nothing contained herein shall be deemed to constitute a gift, grant, or dedication of the Driveway Access Easement Area to the general public or for any public purpose whatsoever, it being the intention of the Grantor and Grantee that this Easement will be strictly limited and applicable to Grantor and Grantee.

   10.  Each of the obligations, rights, responsibilities, and easements created or imposed are appurtenant to Grantor and Grantee's properties and may not be transferred, assigned, or encumbered. Each covenant contained in this document: (i) is made for the direct, mutual, and reciprocal benefit of Grantor's property and Grantee's property; (ii) constitutes a covenant running with the properties; and (iii) will inure to the benefit of each and all of the parties and each party's successors, assigns, and mortgagees.

   11.  No default or other breach will entitle any party to cancel, rescind or otherwise terminate this Driveway Access Easement and Maintenance Agreement.

   12.  All notices and other communications required are permitted to be given pursuant to the terms and conditions of this Driveway Access Easement and Maintenance Agreement shall be in writing, and delivered personally or sent via Certified Mail, Return Receipt Requested or overnight carrier to the parties at the addresses set forth below to such other parties or addresses as each party may designate by written notice to the other:

TO GRANTOR:        GRANTEE:

Richard Leone        Michael K. Merbler
Sky Manor Airport Partners, LLC   High Brass Farm Land Holdings, LLC
Sky Manor Airport      68 Sky Manor Road
48 Sky Manor Road      Pittstown, NJ
Pittstown, NJ

13.     This Driveway Access Easement and Maintenance Agreement shall run with the land, and Grantor has the right to record this Agreement in the Office of the County Clerk of Hunterdon County.

Sky Manor Airport Partners, LLC

By: _____

Dated: _____

WITNESS:

High Brass Farm Land Holdings, LLC

By: _____

Michael K. Merbler
Managing Partner

Dated: _____

WITNESS:

217858369v1

4

EXHIBIT A (1/9/00)

- - - GRAVEL PORTION OF EASEMENT
_____ PAVED PORTION



# EXHIBIT B

Prepared By:    Guliet D. Hirsch, Esq.
                Archer & Greiner, PC
                101 Carnegie Center
                Suite 300, 3rd Floor
                Princeton, NJ 08540

## EXHIBIT "B" TO SETTLEMENT AGREEMENT

## EXTINGUISHMENT OF EASEMENTS

This Extinguishment of Easements made this ____ day of _____, 2020, by the High Brass Farm Land Holdings, LLC, a New Jersey limited liability company with a principal address at 68 Sky Manor Road, Pittstown, New Jersey ("High Brass"), and Sky Manor Airport Partners, LLC, a limited liability company of the State of New Jersey with a principal address at 48 Sky Manor Road, Pittstown, New Jersey (the "Grantee").

1.    High Brass is the holder and beneficiary of the following easements:

   A.    Access Easement, recorded in the Hunterdon County Clerk's Office at Deed Book 91 page 243; and.

   B.    Access Easement, recorded in the Hunterdon County Clerk's Office, at Deed Book 771, Page 936.

   (Collectively, the easements described above are referred to as the "Access Easements").

2.    High Brass has agreed to extinguish and release to Grantee any and all right, title and interest in and to the portion of the Access Easements.

NOW, THEREFORE, in consideration of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, High Brass does hereby extinguish and release all right, title and interest that High Brass possesses to the Grantee.

IN WITNESS WHEREOF, High Brass has executed this Extinguishment of Easements the day and year first written above.

WITNESS:                                          High Brass Farm Land Holdings, LLC

_____        _____
                                                  Michael J. Merbler, Managing Member


STATE OF NEW JERSEY            :

COUNTY OF HUNTERTON                :


I CERTIFY that on this _____ day of _____, 2020, Michael J. Merbler, personally came before me and acknowledged under oath to my satisfaction that he:

(a)     is the Managing Member of High Brass Farm Land Holdings, LLC., and the Grantor named in this Extinguishment of Easements;

(b)     this Extinguishment of Easements was signed and delivered on behalf of High Brass Farm Land Holdings, LLC. as its voluntary act duly authorized; and

(c)     High Brass Farm Land Holdings, LLC made this Extinguishment of Easements for $1.00 as the full and actual consideration paid or to be paid for the extinguishment of title. (Such consideration is defined in N.J.S.A. 46:15-5.)


_____
Notary Public