| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>Edmond M. George, Esquire<br>Michael D. Vagnoni, Esquire (*pro hac vice*)<br>Angela L. Mastrangelo, Esquire<br>Nicholas R. Jimenez, Esquire<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ  08054<br>Phone: (856) 795-3300<br>Fax: (856) 482-0504<br>edmond.george@obermayer.com<br>*Attorneys for the Debtor* | |
| **In re:**<br><br>**High Brass Farm Land Holdings LLC,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-25217-MBK**<br>**Judge: Michael B. Kaplan** |
| **MICHAEL MERBLER, ELIZABETH PERRY-MERBLER, HIGH BRASS FARM LAND HOLDINGS LLC, and HIGH BRASS FARM, LLC,**<br>    Plaintiffs,<br><br>v.<br><br>**SKY MANOR AIRPORT PARTNERS, LLC, NEW JERSEY TITLE INSURANCE COMPANY N/D/B/A CATIC TITLE INSURANCE COMPANY AND BANK OF AMERICA,**<br>    Defendants. | **Adversary No. 19-02093 (MBK)**<br><br>Hearing Date: February 19, 2020<br>Hearing Time: 11:00 a.m.<br>Court Room: 8 |

**MEMORANDUM OF LAW IN SUPPORT OF HIGH BRASS FARM LAND HOLDINGS LLC'S MOTION FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT AMONG HIGH BRASS FARM LAND HOLDINGS LLC AND SKY MANOR AIRPORT PARTNERS, LLC**

High Brass Farm Land Holdings LLC (the "Debtor"), by and through its undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby submits the following Memorandum of Law in support of its Motion for an Order Approving the Settlement Agreement Among the Debtor and Sky Manor Airport Partners, LLC (the "Motion").

1

## I. PRELIMINARY STATEMENT

For over ten years the Debtor has operated as a Single Asset Real Estate holding company, owning one parcel of real estate located at 68 Sky Manor Road, Pittstown NJ 08867 (the "Farm"). The Farm is utilized a horse training and rehabilitation business by High Brass Farms, LLC ("HBFI"), an affiliate of the Debtor. HBFI occupies the Farm pursuant to a month to month pass through Lease arrangement with the Debtor, wherein HBFI funds the payments of the secured debt and taxes on the Farm. Also present on the Farm are residential houses, including one COAH low income unit. Adjacent to the Farm is a private aviation facility, known as Sky Manor Airport owned and operated by Sky Manor Airport Partners, LLC ("Sky Manor", together with the Debtor the "Parties").

Prior to the bankruptcy, a dispute arose over the rights the Debtor had to access the Farm, and the failure of Sky Manor's predecessor in interest to have recorded an access easement (the "Easement"). In the midst of litigation related to the Easement, the Debtor's secured lender issued a Notice of Foreclosure which promoted the Debtor's bankruptcy filing.

The settlement was a result of hours of negotiations and lengthy analysis by the parties to the settlement. The settlement contemplated by the Settlement Agreement will resolve with certainty the Debtor's rights to access to the Farm, maintenance of the easement, and provide a value to the Debtor's estate which was otherwise uncertain. The settlement reached by the Debtor and Sky Manor falls within the range of reasonableness and is fair and in the best interest of the Debtor's estate.

## II. FACTUAL BACKGROUND

The Debtor's case was commenced on August 6, 2019 by the filing of a voluntary Chapter 11 petition under 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). The Debtor

4847-8183-3906

acquired the Farm, 35.19 acres, consisting of commercial and residential real property in 2005, which is utilized by an affiliate as a full-service equine boarding, training and show facility consisting of several barns containing forty (40) stalls, indoor and outdoor training and equine rehabilitation facility, fenced paddocks, and residential rental properties. Sky Manor, acquired the adjacent commercial real property in 2008, which property is utilized as a private aviation facility, known as Sky Manor Airport, with a 2,900-foot paved runway equipped for day and night operation (the "Airport").

Prior to 2002, the Farm and the Airport were owned as a single 94-acre tract of land which is now subdivided pursuant to final approval granted by the Alexandria Township Planning Board ("Planning Board") in a Resolution dated January 20, 2005. A subdivision plat was recorded on June 15, 2005, with an amended plat recorded as instrument on July 5, 2006, which subdivision ("Subdivision") divided the property into 19 distinct lots (the "Subdivision") which became the Airport, the Farm, and a 17 Lot residential development that serves as a residential community ("Airpark"). As a result of a site plan approval granted on April 10, 2006, the Airport was permitted to extend its runway over what was at that time the Farm's driveway, and the Subdivision approved the removal of the Farm's original driveway and also approved access to the Farm to/from Sky Manor Road via a driveway through the Airport's property (the "New Driveway").

Around 2015 a dispute arose between Sky Manor and the Debtor concerning the rights to use the New Driveway, which is the only means of ingress and egress other than an emergency access, to and from the Farm via Sky Manor Road. Without access to Sky Manor Road via the New Driveway, the Farm was completely landlocked except for the emergency access.

3

On or about December 13, 2018, High Brass, along with its two (2) members, Michael Merbler and Elizabeth Perry-Merbler, and High Brass Farm, LLC commenced a civil action in the Hunterdon County Superior Court against Sky Manor Airport Partners, LLC, New Jersey Title Insurance Company n/d/b/a CATIC, and Fidelity National Title Insurance,[1] Case No: HNT-L-000477-18 (the "State Litigation").  On August 14, 2019, the Litigation was removed to the Bankruptcy Court seven (7) days after the Petition Date captioned *High Brass Farm Land Holdings LLC et al. v. Sky Manor Airport Partners, LLC et al*., and assigned adversary number 19-02093(MBK) ("Adversary Proceeding", collectively with the State Litigation, the "Litigation").

The Debtor and Sky Manor agreed to mediation with Anthony Sodono, Esq. serving as the mediator (the "Mediation").  The Parties having engaged in the Mediation of their disputes and have reached a resolution of the issues related to the New Driveway and ingress and egress to the Farm. The Debtor and Sky Manor have spent significant time analyzing the respective positions of each other and have concluded that a resolution of the issues with Sky Manor, only, and without any prejudice to the remaining alleged claims against the remaining defendants.  The Parties have agreed that resolution of the claims short of adjudicative litigation, best serves the interests of the Debtor's bankruptcy estate.

The litigation with Sky Manor was disputed, contested and expensive. Though the Debtor believes that it will prevail on the claims against Sky Manor, the Debtor wishes to settle the clams, the outcome of which is uncertain. The settlement ensures a right to access the Farm, and for maintenance of the New Driveway.

---

[1] Fidelity National Title Insurance filed a motion to dismiss which was granted on April 30, 2019 and is no longer a Party to the action indexed at HNT-L-000477.

The Debtor and Sky Manor have negotiated the proposed Settlement Agreement in good faith, and by this Motion the Debtor seeks authorization to settle and compromise the claims as set forth in the Settlement Agreement. (A copy of the proposed Settlement Agreement is attached to Edmond George's Certification as Exhibit "A").

### D. Terms of the Settlement Agreement

The terms and conditions of the Settlement Agreement provide, *inter alia*, as follows:

A. <u>Settlement</u>. In full and final settlement and satisfaction of the disputes between the Parties as set forth in the Settlement Agreement.

   a. Sky Manor acknowledges the easement for the New Driveway in its present location, and the Parties will execute and file a recorded access easement ("Driveway Access Easement and Maintenance agreement") with the Driveway Access Easement Area described by reference to the marked-up survey excerpt, attached as a part of Exhibit "A" to the Settlement Agreement. The Exhibit "A", Driveway Access Easement and Maintenance agreement shall be fully executed within 15 days of Court Approval of this Settlement Agreement by final order, and recorded by Sky Manor as soon as possible thereafter.

   b. The Driveway Access Easement and Maintenance agreement limits uses by the Debtor to traffic resulting from current or other permitted uses of the Farm. Exhibit "A" also prohibits parking by Sky Manor on or along the gravel portion of the Driveway Access Easement area, except that Sky Manor may have reasonable access to the gravel portion as necessary for maintenance and repair of the existing septic system and propane tank located in that area of the Airport. Exhibit "A" also provides that if in the process of accessing the gravel portion of the easement, Sky Manor damages the surface, it shall immediately repair same at its sole cost and expense.

B. <u>Effective Date</u>. The Settlement Agreement shall become effective on the date it is approved by the Bankruptcy Court (the "Effective Date").

C. <u>Insurance</u>. Starting at the recording date Exhibit "A" and continuing without interruption *ad infinitum* into the future, both Parties shall carry insurance and shall list each other as additional insureds. Also starting at the recording of Exhibit "A", and continuing without interruption *ad infinitum* into the future, the Debtor shall indemnify and hold Sky Manor harmless for all damages arising on the gravel portion of the easement, not covered by insurance and Sky Manor will indemnify and hold the Debtor

5
4847-8183-3906

harmless for any damages occurring on the paved portion of the easement not covered by insurance.

  D. <u>Maintenance and Payment</u>. Starting at the recording date of Exhibit "A", and continuing without interruption *ad infinitum* into the future:

    a. The Debtor shall maintain the gravel portion of the Access Easement at its sole cost.

    b. Sky Manor shall maintain the paved portion of the Access Easement at its sole cost, and maintenance shall include snow-plowing, repairs and repaving in accordance with the following:

    c. The Debtor shall deposit One Thousand Dollars ($1,000.00) per quarter into a designated paving escrow account beginning 15 days after recording of the Exhibit "A" Access Easement, *ad infinitum*, for contribution by the Debtor towards repaving of the paved portion of the Access Easement, and such funds shall not be used for minor repairs or snow-plowing. The amount of the deposit shall be increased on an annual basis in accordance with the BLS consumer price index for the northeast region of the United States.

    d. At such time as Sky Manor deems repaving to be necessary to allow convenient use by its tenants, customers and members, but no more frequently than every eight (8) years, the paved portion of the access easement may be repaved, in which case funds in the paving escrow account may be utilized by Sky Manor for repaving. Sky Manor shall be the contracting party for any repaving, which shall be done in a workmanlike manor. Sky Manor can in its discretion pave more frequently at its own expense, and without the use of the funds set forth in ¶ a hereof.

    e. In the event that the Debtor fails to make any quarterly payment within thirty (30) days of the due date, Sky Manor may, after providing certified mail notice to the Debtor, pursue enforcement of the Settlement Agreement by summary proceeding in the Law Division, Hunterdon County but shall not attempt to block access or otherwise impair the Debtor's interests in the Access Easement.

  E. <u>Nature of the Releases</u>.  For other good and valuable consideration, the Debtor, on one hand, and Sky Manor, on the other hand, mutually release and discharge each other, and their respective heirs, representatives, agents, employees, attorneys, successors, assigns and affiliates, from any and all claims of any nature whatsoever, which the Debtor and Sky Manor, or their successors, assigns and affiliates now or hereafter can or may have against each other, from the beginning of the world to the date of these presents, including, but not limited to, any claims arising out of or in connection with the access between the Debtor and Sky Manor dispute,

6

not otherwise specifically preserved in this Settlement Agreement ("Mutual Releases").

        a.    The Mutual Releases contained herein shall be effective upon a final Order of the Bankruptcy Court approving this Settlement Agreement.

        b.    The Mutual Releases provided for herein shall not apply to any third-party or non-signatory on this Settlement Agreement.

F.    <u>Pre-Petition Damage Claim</u>. Sky Manor's Pre-Petition damage claim shall be allowed as an Unsecured Claim in the amount of Two Thousand Dollar ($2,000.00), which will receive no distribution until other General Unsecured Claims are paid under the Plan. The Debtor has filed a Plan that is consistent with the Settlement Agreement. Sky Manor will support any Plan filed pursuant to the Settlement Agreement.

(See Edmond M. George Certification at Exhibit "A"). The summary herein of the terms is intended as a summary only and all parties in interest are encouraged to read the Settlement Agreement. To the extent that there are any discrepancies between the summary contained herein and the terms contained in the Settlement Agreement, the terms of the Settlement Agreement shall control.

The Settlement is an arms' length, good faith and reasoned resolution of the disputes between the Debtor and Sky Manor, and accordingly, the Debtor seeks approval of the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, and § 105 of the Bankruptcy Code.

### III. <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E) and (O). The statutory basis for the relief requested herein is Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a).

## IV. REQUEST FOR RELIEF

Federal Rule of Bankruptcy Procedure 9019(a) provides "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

The Debtor seeks approval, pursuant to Bankruptcy Code § 105 and Fed. R. Bankr. P. 9019, of the settlement of the claims among the Parties as set forth in the Settlement Agreement.

In *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court instructed as to those factors to be considered in determining whether to approve a settlement. The factors outlined by the Supreme Court in *Anderson* have been uniformly summarized as follows:

> A. the probability of success in the litigation;
> B. the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it;
> C. the difficulties, if any, to be encountered in the matter of collection; and
> D. the paramount interest of the creditors.

*See Martin*, 91 F.3d at 393 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

Bankruptcy Rule 9019 authorizes this Court to approve the settlement entered into by the Parties. The decision whether to accept or reject a compromise is committed to the sound discretion of the Bankruptcy Court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *See Louise's*, 211 B.R. at 801; s*ee also In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

The settlement need not be the best that the debtor could have achieved, but must only fall "within the reasonable range of litigation possibilities." *See In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court is not to substitute its own judgment for that of the debtor. *See Neshaminy Office Bldg.*, 63 B.R. at 803. Moreover, it is not necessary for the court to conduct a truncated trial of the facts of the merits underlying the dispute. *See Grant Broad.*, 71 B.R. at 396; *see also In re A&C Prop.*, 784 F.2d 1377, 1384 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986). Rather, the court need only "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *See Neshaminy Office Bldg.*, 62 B.R. at 803, quoting *In re W.T. Grant Co.*, 4 B.R. 53, 69 (S.D.N.Y. 1977).

The Settlement reached by the Debtor clearly falls within the range of reasonableness for purposes of satisfying Rule 9019 criteria. In the present case, the Settlement Agreement is fair, reasonable, and in the best interest of the estate. The Debtor has engaged in protracted litigation since 2018, and the dispute between the Parties involves complex issues and defenses. Not only would the continuation of the litigation against the Sky Manor be costly and time consuming for the Parties, there are uncertainties in connection with future litigation, including the potential for appeals, which could delay the final determination of the claims against the Sky Manor for a significant period of time. The Parties to the Settlement Agreement spent countless hours in negotiations, both pre-petition and post-petition, in order to resolve all issues between them. The Settlement Agreement resolves the claims against the Parties to the Settlement Agreement with certainty.

The settlement falls within a reasonable range of litigation possibilities and preserves the Debtor's causes of action against non-settling defendants. In exercising its business judgment,

the Debtor has determined that the Settlement is in the best interest of the Debtor's estate and its creditors and that the uncertainly of continued motion practice and trial will increase the burdens on the Debtor's estate. The bankruptcy court need only canvas the issues between the Debtor and Sky Manor to determine that the Settlement does not fall below the lowest point in the range of reasonableness, and that the Settlement Agreement should be approved pursuant to Rule 9019 and Section 105 of the Bankruptcy Code.

## V. **CONCLUSION**

WHEREFORE the Debtor prays this that this Honorable Court enter an order in the form attached approving the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, permitting the Debtor to enter into same and to proceed to effectuate same, including the granting of any releases, and providing such other and further relief as the court deems just and equitable.

Respectfully submitted,

Dated: January 27, 2020

By: */s/ Angela L. Mastrangelo*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (*pro hac vice*)
Angela L. Mastrangelo, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Obermayer Rebmann Maxwell & Hippel LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054
Phone: (856) 795-3300
Fax: (856) 482-0504
*Counsel to the Debtor*